[No. G035456. Fourth Dist., Div. Three. Dec. 20, 2005.]

MARK MOON, Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

1522

**COUNSEL**

Deborah A. Kwast, Public Defender, Thomas Havlena, Chief Deputy Public Defender, Kevin Phillips, Assistant Public Defender, and Jamalyn Ollinger, Deputy Public Defender, for Petitioner.

No appearance by Respondent.

Tony Rackauckas, District Attorney, and Craig McKinnon, Deputy District Attorney, for Real Party in Interest.

**OPINION**

**BEDSWORTH, Acting P. J.**—The difficulties of dealing with the self-represented criminal defendant are myriad and well documented. Trying to provide a fair hearing to a typically obstinate and legally unschooled pro per is one of the most daunting tasks a criminal courts judge ever faces. With the possible exception of "Fire!" no word is less welcome in a criminal trial court than *Faretta*.

That, combined with the our Supreme Court's adjuration to draw every reasonable inference *against* an interpretation of a defendant's statements that might incorrectly suggest a desire for self-representation, will sometimes cause a court to err by denying to a defendant his right to go forward without counsel. We find that to be the case here. We further hold that denial entitled petitioner to relief under Penal Code section 995,[1] and, when that relief was denied, writ relief in this court.

Petitioner Mark Moon was charged in a felony complaint with resisting arrest, aggravated assault on an officer, evading an officer while driving recklessly, driving with a suspended license, and driving under the influence with two prior convictions for that offense. (§§ 148, subd. (a)(1), 245.3; Veh. Code, §§ 2800.2, 14601.2, subd. (a), 23152, subd. (a), 23546, subd. (a).) It was also alleged that Moon suffered a prior strike conviction, served two prior prison terms and refused to submit to a chemical test. (§§ 667, subds. (b)–(i), 667.5, subd. (b); Veh. Code, §§ 23577, subd. (a)(1), 23578.)

At the preliminary hearing, the prosecution called only one witness, California Highway Patrol Officer Arturo Berain. Berain described the high-speed chase that ensued when he tried to pull Moon over for erratic driving. Eventually, Moon hit another vehicle, which brought his car to rest. Berain then pulled behind Moon's car, and his partner got out and ordered Moon to surrender. Instead, Moon put the car in reverse and rammed the officers' car several times. In the process, he nearly hit Berain's partner, all of which provided him enough room to turn his vehicle around and make his escape. The officers followed him, though, and before long, Moon hit a parked car and his vehicle was immobilized once and for all. When the officers confronted him, he struck Berain in the head, but he was eventually subdued and taken into custody. At that time, he admitted he had been drinking and was feeling "wasted."

Toward the end of Berain's direct examination, Moon's court-appointed attorney sought a sidebar, saying Moon had a request. After conferring with counsel in chambers, the magistrate said he understood that Moon wanted either a new attorney (see *People v. Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44] (*Marsden*)) or to represent himself. But when the magistrate asked Moon if he wanted to have a *Marsden* hearing, he said, "No, that's not what I want to do. I want to go pro per."

Moon explained, "The thing is, [my attorney] sit[s] here and play[s] games. I thought I was going to be recalled up last week and she told me I was going to come [at] 1:30, which I did not. Basically, I'm playing catch up. [¶] I know basically everything about my case. She's not asking the questions I want to ask. I feel I could do a lot better. I don't want to come back another day."

---

[1] Unless noted otherwise, all further statutory references are to the Penal Code.

The following exchange then occurred:

"The Court: We can do the *Marsden* hearing right now.

"[Moon]: Yeah, I'd like to continue this and go pro per.

"The Court: What do you mean, 'continue this'? Put it over to another date?

"[Moon]: No, I want to continue doing what we're doing right now. I just don't want to have to come back. I want to do it right now."

At that point, the magistrate warned Moon of the dangers and disadvantages of self-representation. Moon said he understood, but the magistrate refused to give him the reins:

"The Court: . . . [A] request [for self-representation] must be made in a timely manner. [¶] The court is to consider a number of things: whether the request would result in an unreasonable disruption of the proceedings, which in this case I think it would. . . .

"[Moon]: Why is that?

"The Court: Because your attorney has already begun the process of representing you in this hearing.

"[Moon]: Yeah. I just felt she was doing some things I didn't think were okay.

"The Court: Well, we're getting back to the *Marsden.*

"[Moon]: All right.

"The Court: Do you want a *Marsden* or do you not?

"[Moon]: Actually, no. Well, if I have to do a *Marsden* to go pro per, yeah.

"The Court: I'm really not inclined to let you go pro per. I don't think you are in a position to adequately represent yourself.

"[Moon]: I think I am.

"The Court: I don't think your attorney, based on what you have told me, has done anything that would be considered ineffective assistance of counsel.

"[Moon]: I didn't know we were having a *Marsden*. Are we having a *Marsden* right now?

"The Court: No, just a general discussion about the issue.

"[Moon]: That's the reason I haven't said anything yet. I'm telling you, . . . I would do a lot better. I have experience. This is my life. . . . [¶] . . . [¶] . . . Like I said, I have some stuff I can do as far as doing a lot better job. I'm basically going to be asking the same questions but, like I said, I'd be a lot better since I'm representing myself and whatnot. I know how to do it. I totally will give him a chance. It's not difficult. I'd do a lot better. I have a lot more experience as far as handling my own stuff than letting somebody else represent me that obviously doesn't care about me.

"The Court: Well, I'm going to deny your request at this time. [¶] The reasons for that are several: It would be disruptive of these proceedings. You've had an opportunity to make this request earlier and chose not to do so. You haven't made any kind of showing your attorney is inadequately representing you.

"[Moon]: I thought you told me we're not having a *Marsden* hearing.

"The Court: We're not. You said you didn't want one.

"[Moon]: How come you're denying the request?

"The Court: Because you said you didn't want a *Marsden* hearing.

"[Moon]: I said I do if I have to do a *Marsden* hearing to go pro per.

"The Court: Are you unequivocally requesting that you be granted a *Marsden* hearing?

"[Moon]: Yes."

The magistrate then held a *Marsden* hearing, denied Moon's request for a new attorney and resumed the preliminary hearing. During Berain's cross-examination, Moon conferred with his attorney numerous times, and at one point, Moon asked the magistrate if he could ask Berain some questions. The

magistrate said no. After that, Moon repeatedly complained his attorney was not helping him, and once he faulted her for not asking Berain the questions he wanted her to. Exasperated, he turned to the magistrate for help:

"[Moon]: This is not going—nothing—I already said I didn't want her as my attorney. So, I don't know, basically, you know, I mean, you're basically forcing me. I want to get this done today . . . . I want to make sure . . . I get the best representation, you know. Doesn't feel like anything, you know—

"The Court: Mr. Moon, the court has watched you repeatedly interrupt your attorney while she's trying to ask questions, repeatedly distract her when she's trying to listen to the testimony.

"[Moon]: She's not helping me.

"The Court: The person who is primarily responsible for this matter being delayed and the conclusion is you. Your attorney is trying her best to ask relevant questions that might assist in your defense. You're doing your best to completely distract her from her purpose as your attorney.

"[Moon]: Okay. I said okay. Then, all right. Okay. I guess continue."

The magistrate suggested that rather than attempting to micro-manage counsel's cross-examination of Berain, Moon should just jot down the general areas he wanted her to cover. However, soon after she resumed questioning, Moon blurted out a question he wanted her to ask. He subsequently interrupted her several more times while she was trying to put questions to Berain.

At the end of the hearing, after binding Moon over on all charges, the court said it "would like to put a few matters on the record in case there's subsequent review of this. [¶] Mr. Moon has, since the court's last admonition, continued his practice of interrupting counsel both while counsel was trying to ask questions and while counsel is trying to listen to the testimony of the witness. [¶] It does appear to the court that counsel has patiently conferred with Mr. Moon. And because Mr. Moon has insisted on speaking audibly, so we can all hear what he had to say to his attorney, counsel has on numerous occasions complied with his request to ask certain questions, even though they may have not been totally relevant and even though they may have been asked and answered on previous occasions. [¶] So Mr. Moon has received extremely adequate representation at this hearing . . . ."

A week later, the prosecution filed an information in superior court that contained all the previous charges, except the prior strike allegation. Moon moved to dismiss the information under section 995 on the basis he was denied his right of self-representation at the preliminary hearing. The court found "the magistrate did make an error in not allowing Mr. Moon to represent himself." However, it determined there was no ground for relief because "there's been no showing of prejudice . . . ." Accordingly, the superior court denied Moon's motion.

Moon filed a petition for writ of mandate/prohibition, challenging this ruling. We stayed the proceedings and ordered respondent and the People (real party in interest) to show cause why the petition should not be granted. Having fully considered the parties' arguments, we believe Moon is entitled to have the information set aside under section 995.

I

We first take up the issue of whether the court erred in denying Moon's request for self-representation. The People argue no error occurred because Moon's request was untimely and equivocal, but we cannot agree.

In *Faretta v. California* (1975) 422 U.S. 806 [45 L.Ed.2d 562, 95 S.Ct. 2525] (*Faretta*), the United States Supreme Court decided "a defendant in a state criminal trial has a constitutional right to proceed *without* counsel when he voluntarily and intelligently elects to do so. Stated another way, . . . a State may [not] constitutionally hale a person into its criminal courts and there force a lawyer upon him, . . . when he insists that he wants to conduct his own defense." (*Id.* at p. 807.)

The high court made clear its ruling had broad historical support and was aimed at preserving "the inestimable worth of free choice" embodied in the Bill of Rights. (*Faretta, supra,* 422 U.S. at pp. 833–834.) The court stated, "It is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts. But where the defendant will not voluntarily accept representation by counsel, the potential advantage of a lawyer's training and experience can be realized, if at all, only imperfectly. To force a lawyer on a defendant can only lead him to believe that the law contrives against him. Moreover, it is not inconceivable that in some rare instances, the defendant might in fact present his case more effectively by conducting his own defense. Personal liberties are not rooted in the law of averages. The right to defend is personal. The defendant, and not

his lawyer or the State, will bear the personal consequences of a conviction. It is the defendant, therefore, who must be free personally to decide whether in his particular case counsel is to his advantage. And although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of 'that respect for the individual which is the lifeblood of the law.' [Citation.]" (*Id.* at p. 834, fn. omitted.)

The constitutional right of self-representation is not self-executing, however. As our Supreme Court has explained, "although in a criminal trial a defendant has a federal constitutional, unconditional right of self-representation, in order to invoke that right, he or she must make an unequivocal assertion of that right within a reasonable time prior to the commencement of trial. [Citations.]" (*People v. Bradford* (1997) 15 Cal.4th 1229, 1365 [65 Cal.Rptr.2d 145, 939 P.2d 259].)

"The court faced with a motion for self-representation should evaluate not only whether the defendant has stated the motion clearly, but also the defendant's conduct and other words. Because the court should draw every reasonable inference against waiver of the right to counsel, the defendant's conduct or words reflecting ambivalence about self-representation may support the court's decision to deny the defendant's motion. A motion for self-representation made in passing anger or frustration, an ambivalent motion, or one made for the purpose of delay or to frustrate the orderly administration of justice may be denied." (*People v. Marshall* (1997) 15 Cal.4th 1, 23 [61 Cal.Rptr.2d 84, 931 P.2d 262].)

There was nothing ambivalent about Moon's request for self-representation. In fact, during the colloquy surrounding his request, he repeatedly told the magistrate he wanted to "go pro. per." He also explained the basis for the request, namely that he believed he could do a better job than his court appointed attorney. The magistrate was understandably skeptical about this assertion, but a defendant's ability to represent himself is not a proper consideration under *Faretta*. (*People v. Welch* (1999) 20 Cal.4th 701, 733 [85 Cal.Rptr.2d 203, 976 P.2d 754].) "[T]he competence that is required of a defendant seeking to waive his right to counsel is the competence to *waive the right*, not the competence to represent himself." (*Godinez v. Moran* (1993) 509 U.S. 389, 399 [125 L.Ed.2d 321, 113 S.Ct. 2680], fn. omitted.)

The People do not question Moon's competence to waive his right to an attorney. Instead, they argue Moon's request to proceed in propria persona was properly denied because the request was not "compelling" and because it was "based upon [Moon's] expression of mere frustration with the proceed-

ings rather than an unequivocal desire for self-representation." But the law does not require a defendant to make a "compelling" case for self-representation. "[W]hen a motion to proceed pro se is timely interposed, a trial court *must* permit a defendant to represent himself upon ascertaining that he has voluntarily and intelligently elected to do so, irrespective of how unwise such a choice might appear to be." (*People v. Windham* (1977) 19 Cal.3d 121, 128 [137 Cal.Rptr. 8, 560 P.2d 1187], italics added and omitted; see also *Hirschfield v. Payne* (9th Cir. 2005) 420 F.3d 922 [defendant's lack of legal knowledge is an insufficient basis to deny his request for self-representation].)

To be sure, Moon did express frustration at the hearing. But that was because he felt he could "do a lot better" than his attorney and the magistrate was unwilling to let him go it alone. Moon's frustration at not being allowed to represent himself cannot be used as a justification for denying his request for self-representation in the first place. Judging from everything he said and did during the hearing, it readily appears Moon sincerely wanted to act as his own attorney. His many requests to do so were not made in passing anger or frustration, nor can they fairly be described as ambivalent. Rather, they strike us as being unequivocal and to the point.

As for the timeliness issue, the record shows that although Moon did not make his request for self-representation until the preliminary hearing was underway, he repeatedly told the magistrate he did not want a continuance and was prepared to proceed as his own attorney without interruption. Nonetheless, the People claim Moon's request came too late because granting it "would have inevitably resulted in a disruption of the proceedings." We fail to see any inevitability here. Moon did not want a continuance or even so much as a recess. There was nothing upon which to base a prediction of disruption, and, in fact, the "inevitable disruption" finding was based on the magistrate's equation of disruption with replacement of counsel. When Moon asked him why he thought it would be disruptive to allow him to represent himself, the magistrate's only explanation was, "Because your attorney has already begun the process of representing you in this hearing."

That, of course, has very little to do with disruption. If replacement of counsel is the same thing as disruption, no *Faretta* motion can ever be granted during a hearing; and that is clearly not the law.

The People attempt to base an "inevitable disruption" argument upon Moon's conduct following the denial of his *Faretta* request but that argument is completely circular. It is clear Moon's disruptive behavior was prompted by his lack of control over the case. Had the court granted his request for self-representation, there is no telling how he would have conducted himself.

We can hardly deny a party a constitutional right and then hold it against him that such denial prompted outrage and frustration.

We do not excuse Moon's behavior. But the fact remains, there is nothing in the record to indicate Moon was prone toward obstreperousness *before* the court denied his *Faretta* motion. In light of this, and because Moon did not seek a continuance, we believe his request was timely. (See *People v. Tyner* (1977) 76 Cal.App.3d 352, 354–355 [143 Cal.Rptr. 52] [trial court erred in denying defendant's pretrial motion for self-representation that was unaccompanied by a request for a continuance].) In coming to this conclusion, we note that the request came during the direct examination of the first witness at the preliminary hearing. Short of raising the right at arraignment, which no case has ever required, it would be difficult to assert one's *Faretta* right much earlier.

Having determined Moon's *Faretta* request was both timely and unequivocal, we conclude the magistrate erred in denying it. This resulted in a violation of Moon's constitutional right of self-representation.

## II

■ We must now decide whether this violation entitles Moon to relief under section 995. That section states an information must be set aside if the defendant was not "legally committed by a magistrate." (§ 995, subd. (a)(2)(A).) Case law characterizes a legal commitment as one in which the defendant's substantial rights were protected during the commitment process. (See, e.g., *People v. Pompa-Ortiz* (1980) 27 Cal.3d 519, 523 [165 Cal.Rptr. 851, 612 P.2d 941].) Thus, "If the magistrate disregards substantial rights guaranteed to the defendant the resulting commitment is unlawful" and "the information 'shall' be set aside . . . ." (*People v. West* (1990) 224 Cal.App.3d 1337, 1342 [274 Cal.Rptr. 569].)

The Supreme Court recently confirmed these principles in *People v. Konow* (2004) 32 Cal.4th 995 [12 Cal.Rptr.3d 301, 88 P.3d 36] (*Konow*). In that case, the magistrate at defendants' preliminary hearing erroneously believed he lacked authority to dismiss the complaint in the furtherance of justice under section 1385. In deciding whether this resulted in the denial of a substantial right, the Supreme Court reviewed three cases in which a defendant's right of cross-examination and/or right to present an affirmative defense was erroneously restricted at the preliminary hearing: *Jennings v. Superior Court* (1967) 66 Cal.2d 867 [59 Cal.Rptr. 440, 428 P.2d 304], *Priestly v. Superior Court*

(1958) 50 Cal.2d 812 [330 P.2d 39] and *Mitchell v. Superior Court* (1958) 50 Cal.2d 827 [330 P.2d 48]. (*Konow, supra,* 32 Cal.4th at pp. 1023–1024.) The *Konow* court noted that in *Jennings* and *Priestly,* the error amounted to the denial of a substantial right because it tangibly undermined the defendant's right to a fair hearing, but that was not the case in *Mitchell,* because the error was simply not germane to any issue presented at the preliminary hearing. (*Konow, supra,* 32 Cal.4th at pp. 1023–1024.)

Applying the lesson of those cases more generally to the case before it, the *Konow* court held: "[A] defendant is denied a substantial right affecting the legality of the commitment when he or she is subjected to prejudicial error, that is, error that reasonably might have affected the outcome [citation]. The conclusion we reach is consistent with the results reached in reported decisions in this area of the law, including of course *Priestly* and *Mitchell* as well as *Jennings,* from which our holding derives. The decision we reach also is in accord with judicial practice in other areas of the law where, as in the context of plain error rules, a defendant is deemed to be denied a substantial right by exposure to prejudicial error. [Citations.]" (*Konow, supra,* 32 Cal.4th at pp. 1024–1025.)

The *Konow* court determined the defendants in that case had been exposed to prejudicial error because the magistrate not only misunderstood his section 1385 authority, he also had "expressed a strong desire to dismiss the complaint in furtherance of justice." (*Konow, supra,* 32 Cal.4th at p. 1027.) Under these circumstances, the Supreme Court found the defendants were denied a substantial right affecting the legality of their commitment and were therefore entitled to relief under section 995. (32 Cal.4th at pp. 1027–1028.)

The People contend that, like the defendants in *Konow,* Moon must show he was exposed to prejudicial error before the information against him may be set aside. More precisely, the People claim Moon must demonstrate "he would not have been committed to superior court after the preliminary hearing had the magistrate granted his mid-hearing request to discharge his public defender and allow [him] to represent himself through the remainder of that proceeding." We disagree.

██ Despite the seemingly broad holding in *Konow,* we must remember " ' " 'the language of an opinion must be construed with reference to the facts presented by the case, and the positive authority of a decision is coextensive only with such facts.' " ' [Citations.]" (*Trope v. Katz* (1995) 11 Cal.4th 274, 284 [45 Cal.Rptr.2d 241, 902 P.2d 259].) *Konow* dealt with a defendant's statutory dismissal rights, and its holding is derived from cases involving the right to cross-examine witnesses and present evidence. *Konow* demonstrates that when transgressed, these rights readily lend themselves to harmless-error analysis.

But it is seldom easy to quantify prejudice from the denial of the right to self-representation because, as the United States Supreme Court explained in *Faretta*, such a denial strikes more at the perceived fairness of the proceedings and the defendant's freedom of choice than it does his ability to obtain a more favorable outcome. Indeed, "The purpose of the right is to protect the defendant's personal autonomy, not to promote the convenience or efficiency of the trial. [Citation.] Thus, a denial of the right automatically prejudices the defendant's freedom interest." (*Bittaker v. Enomoto* (9th Cir. 1978) 587 F.2d 400, 403.)

Moreover, "[a]pplication of harmless error analysis is particularly inappropriate to denial of the right to self-representation because a harmless error standard would, in practical effect, preclude vindication of the right. Since seasoned appointed counsel can almost invariably provide better legal representation than a pro se defendant, denial of a request to proceed pro se could rarely, if ever, be shown to have been prejudicial." (*Myers v. Johnson* (5th Cir. 1996) 76 F.3d 1330, 1338.) Inevitably, "[a]ny rule which purported to assess the quality of a would-be *Faretta* accused's representation by the harmless error standard would . . . erode the pro se right itself." (*People v. Joseph* (1983) 34 Cal.3d 936, 946 [196 Cal.Rptr. 339, 671 P.2d 843], italics omitted.)

█  Thus, it is hardly surprising that the United States Supreme Court has determined the right of self-representation "is not amenable to 'harmless error' analysis." (*McKaskle v. Wiggins* (1984) 465 U.S. 168, 177, fn. 8 [79 L.Ed.2d 122, 104 S.Ct. 944].) The high court has made it clear that the "[t]he right is either respected or denied; its deprivation cannot be deemed harmless." (*Ibid.*) Indeed, the right is such an essential component of fundamental fairness that its deprivation is deemed to undermine the integrity of the trial process itself. (See *Johnson v. United States* (1997) 520 U.S. 461, 468–469 [137 L.Ed.2d 718, 117 S.Ct. 1544].) Like a total deprivation of the right to counsel, an infringement of the right of self-representation is considered a " 'structural error' " that defies harmless-error analysis. (*Ibid.*)

The characterization of the right of self-representation as a fundamental constitutional right bearing on the structural integrity of the trial process is important when it comes to applying the "plain error rules" referenced in *Konow*. (See *Konow, supra,* 32 Cal.4th at p. 1025.) Whereas those rules typically foreclose appellate review of claims that were not raised at trial, courts have carved out an exception for constitutional or structural errors. (See, e.g., *People v. Flood* (1998) 18 Cal.4th 470, 482, fn. 7 [76 Cal.Rptr.2d

180, 957 P.2d 869]; *United States v. Recio* (9th Cir. 2004) 371 F.3d 1093, 1101.) In so doing, these courts have recognized that certain constitutional and structural errors affect the "substantial rights" of the defendant, which is the very touchstone for granting relief under section 995. (*People v. Flood, supra,* 18 Cal.4th at p. 482, fn. 7; *United States v. Recio, supra,* 371 F.3d at p. 1101.)

This was also made plain in *Curry v. Superior Court* (1977) 75 Cal.App.3d 221 [141 Cal.Rptr. 884]. In that case, the magistrate applied the wrong standard in denying petitioner's request for self-representation at the preliminary hearing. In deciding the error warranted relief under section 995, the *Curry* court held: "Petitioner had a right to represent himself at the preliminary examination. The right to represent oneself stands in equal dignity to the right to counsel. Therefore, petitioner was illegally committed. No prejudice need be shown by a petitioner who, from the very beginning, has repeatedly asserted that he elected to represent himself. The petitioner was not lawfully committed." (75 Cal.App.3d at p. 229, fns. omitted.)

This conclusion is fully consistent with the *Jennings* opinion, upon which the *Konow* decision was based. In *Jennings,* the court recognized the denial of certain preliminary hearing rights, such as the right to counsel, renders the commitment process unlawful per se, whereas "a more selective test is applied" when other rights are involved, such as those relating to the admissibility of evidence. (*Jennings v. Superior Court, supra,* 66 Cal.2d at pp. 874–875.) Other cases have also recognized this distinction. (See, e.g., *Stroud v. Superior Court* (2000) 23 Cal.4th 952, 963, fn. 4 [98 Cal.Rptr.2d 677, 4 P.3d 933] [defendant entitled to section 995 relief if, in violation of section 861, his preliminary hearing is not completed in one session, "even if he suffered no prejudice beyond the interruption or delay itself"]; *Currie v. Superior Court* (1991) 230 Cal.App.3d 83, 98 [281 Cal.Rptr. 250] [the denial of certain preliminary hearing rights is inherently substantial].)

We do not read *Konow* as obliterating this distinction. Because *Konow* did not involve structural error, the opinion is logically limited to those cases in which the error in question is susceptible to harmless-error analysis. As we have explained, this is not one of those cases. The error here is simply of a different nature and magnitude than the one involved in *Konow. Faretta* and its progeny make clear that the right of self-representation is rooted in the historical underpinnings of our adversarial system of criminal justice and is one of the few rights that compel automatic reversal when transgressed. Given this, we believe the right of self-representation qualifies as a "substantial right" for purposes of this case. It follows that because the magistrate violated Moon's constitutional right of self-representation, his commitment was unlawful.

## DISPOSITION

Let a peremptory writ of mandate issue directing the superior court to set aside its order denying Moon's section 995 motion, and to enter a new order granting the motion. The stay previously issued is dissolved.

Moore, J., and Ikola, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied March 29, 2006, S140696.