Filed 5/28/15  P. v. Peoples CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>TIMOTHY PEOPLES,<br><br>    Defendant and Appellant. | H040044<br>(Monterey County<br>Super. Ct. No. SS111396) |

STATEMENT OF THE CASE

In superior court case number SS090914A, a complaint charged defendant Timothy Peoples with two counts of assault by a life prisoner by means of force likely to produce great bodily injury (Pen. Code, § 4500),[1] two counts of attempted murder of a custodial officer (§§ 664, subd. (e)/187), and two counts of criminal threats (§ 422), with an allegation of four prior strike convictions (§ 1170.12, subd. (c)(2)).  In superior court case number SS111396A, a complaint charged defendant with two counts of battery by an inmate on a non-prisoner (§ 4501.5) and one count of battery upon a prison officer by an inmate (§ 4501.1), with an allegation of four prior strike convictions (§ 1170.12, subd. (c)(2)).

---

[1] Subsequent unspecified statutory references are to the Penal Code.

On May 2, 2012, the trial court ordered the two cases to be consolidated. It designated case number SS111396A as the lead case number.

A consolidated information, filed on August 6, 2012, charged defendant with two counts of assault by a life prisoner by means of force likely to produce great bodily injury (§ 4500; counts 1 and 2), two counts of attempted murder of a custodial officer (§§ 664, subd. (e)/187, subd. (a); counts 3 and 4), two counts of criminal threats (§ 422; counts 5 and 6), two counts of battery by an inmate on a non-prisoner (§ 4501.5; counts 7 and 9), and one count of battery upon a prison officer by an inmate (§ 4501.1; count 8). The information alleged that defendant had four prior strike convictions (§ 1170.12, subd. (c)(2)).

On February 14, 2013, a jury returned guilty verdicts on counts 1, 2, 5, 6, 8, and 9. The jury returned verdicts of not guilty on counts 3, 4, and 7. On February 20, 2013, the trial court found the strike allegations to be true. On August 8, 2013, the trial court sentenced defendant to a prison term of 104 years to life.

Defendant now appeals from the judgment of conviction, arguing that the trial court erred in denying a *Marsden*[2] motion and a *Faretta*[3] motion. He additionally asserts that the abstract of judgment must be modified to accurately describe the convictions in counts one and two. As set forth below, we will order the abstract of judgment modified to accurately describe counts one and two, and we will affirm the judgment in all other respects.

---

[2] *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).

[3] *Faretta v. California* (1975) 422 U.S. 806 (*Faretta*)

2

## I. *The Trial Court Did Not Err in Denying Defendant's Marsden Motion*

Defendant contends that the judgment of conviction must be reversed because the trial court erred in denying his *Marsden* request for appointment of substitute counsel. As explained below, we conclude that the trial court did not abuse its discretion in denying defendant's *Marsden* motion.[5]

### A. *Background*

On August 10, 2011, the trial court appointed Kimberly Barnett to represent defendant in case number SS111396A. On September 1, 2011, defendant made a *Marsden* request for appointment of substitute counsel in case number SS111396A. The trial court continued the matter to September 8, 2011 for a hearing on the *Marsden* motion.

At the *Marsden* hearing on September 8, 2011, defendant explained that Barnett was representing him in case number SS090914A, and that he and Barnett had "multiple conflicts" in that case. Defendant expressed his dissatisfaction with Barnett's representation in case number SS090914A: "[I]n my other case, I have to try to salvage the defense that she messed up in that case. She has not filed any motions that is actually in my interest. She suppressed everything as far as evidence is concerned in the interest of the prosecution, which I can actually prove. She has done everything to diminish my whole defense." The trial court asked defendant to describe the evidence that Barnett had suppressed in case number SS090914A, and defendant stated that Barnett had suppressed

---

[4] The facts of defendant's crimes are irrelevant to the issues presented on appeal. We therefore will not summarize those facts.

[5] Defendant made several *Marsden* motions during the course of the proceedings. His argument and the facts he cites in his argument are limited to the *Marsden* motion that was made on September 1, 2011 and ruled upon on September 8, 2011. We therefore will evaluate only that *Marsden* motion.

a baton that officers used to hit him. Defendant noted that he had filed "a writ of mandate and prohibition in the 6th Appellate Court against [Barnett]" and a State Bar complaint against Barnett. Defendant also asserted that Barnett was a liar with whom he had no working relationship: "[T]here ain't going to never be no working relationship between me and her. I cannot stand the lady. The lady is no more than a habitual liar. That's all she ever would do is lie."

The trial court summarized defendant's arguments: "So let me just summarize to make sure I understand your complaints with regard to Ms. Barnett. You are not happy that she was appointed to represent you in this case; that you do not like her, and you indicated that she is a habitual liar, and you do not feel she should represent you in this case because you don't like her." In response to the trial court's summary, defendant responded, "Yeah." Defendant then added that, in case number SS090914A, Barnett "lied right to the judge" about "researching some witnesses" and "a gang of stuff." Defendant also noted that Barnett had refused to "fil[e] things against judges and attorneys."

The trial court asked Barnett to respond to defendant's complaints. Barnett explained that defendant "wanted to file a 170.6 motion" against the trial judge in case number SS090914A. Barnett "did not concur with" the motion, but she nonetheless helped defendant to file the motion on his own. She described the writ petition and State Bar complaint that defendant had filed: "His writ in the 6th District is basically a request for his case to be dismissed. [¶] As far as his referring me to the state Bar for discipline or misconduct, the state Bar sent him a letter in July 2011 stating that he had not cited any reasons for discipline by the state Bar and that they had closed that file."

Barnett responded to defendant's allegation that she conspired with the prosecution: "[Defendant] has accused me of conspiring with the prosecution . . . . My feelings for the prosecution are probably similar to his feelings for me. So I do not conspire with the prosecution. My goal is to defend him to the best of my ability. I do

4

not offer the prosecution evidence they shouldn't have.  And I certainly don't play nice with the prosecution."  She also responded to defendant's allegation that she had suppressed a baton, explaining that "nowhere in the discovery does it state that a baton was utilized on [defendant]."

Barnett noted that, before she was appointed to represent defendant in case number SS090914A, six other attorneys had represented him in that case.  She explained that the previous attorneys had "working relationship" problems with defendant.  She conceded that that she and defendant also had a "communication problem," explaining that defendant "doesn't want to participate" and had refused to see her on an occasion when she attempted to meet with him.  She emphasized, however, that she could competently represent defendant:  "I come from a position where just because a client— you have communication problems, and it's difficult to work with a client, it doesn't necessarily cause a conflict.  We work through that.  My duty to him is to be sure that he has all of his rights met; a proper representation put forth; that no stone is left unturned as far as discovery and witnesses.  Those are the things that I'm doing.  And just because he doesn't want to participate doesn't necessarily show me that that's a conflict."  She noted that she had hired an additional investigator to facilitate better communication with defendant and to ensure a thorough investigation.

Barnett finally denied defendant's accusation that she was a liar.  She stated that she had never lied in a court proceeding.  She emphasized:  "I take great pains to be sure that I'm truthful and forth right [*sic*] with the Court, as I am with my clients."  She explained that she had been "truthful and honest" in all of her dealings with defendant.

The trial court provided defendant an opportunity to respond to Barnett's comments.  Defendant asserted that his State Bar complaint against Barnett was "still opened."  He also asserted that his pending writ petition was "based on ineffective assistance of counsel."  He complained that Barnett took no action after he informed her that he had been hit with a baton in case number SS090914A.  He then repeatedly stated

5

that Barnett was a liar, and he emphasized that he would rather represent himself than have Barnett represent him.

When defendant finished speaking, the trial court made a finding that Barnett was "not a liar." As the trial court was making the finding, defendant interrupted. Defendant stated: "I'll tell you what, we ain't got to go through this. Here is my *Ferretta* [*sic*] motion. You can hear that and she can take her ass on about her business plain and simple, because she is a damn liar." After defendant's outburst, the trial court made a finding that Barnett was "credible," "forthright," and had "made honest representations" in court. Defendant again interrupted, stating: "You're full of shit. Just take my *Ferretta* [*sic*] motion." Following this second interruption, the trial court noted that defendant had "done numerous things to get in the way" of Barnett's representation, yet Barnett was still willing to represent him and had gone "above and beyond" in securing an additional investigator for defendant's case. Defendant responded to the trial court's comments, stating: "She is a damn liar, like I said. And you're a damn liar just as well as she is." Following defendant's comment, the trial court stated that Barnett was "willing and able" to "provide professional representation" with defendant's "best interest at heart," and it denied defendant's *Marsden* motion.

**B.  *Legal Principles and the Standard of Review***

"The seminal case regarding the appointment of substitute counsel is *Marsden, supra,* 2 Cal.3d 118, which gave birth to the term of art, a '*Marsden* motion.' " (*People v. Smith* (1993) 6 Cal.4th 684, 690 (*Smith*).) *Marsden* held that a criminal defendant has a right to substitute counsel on a proper showing that the constitutional right to counsel would otherwise be substantially impaired. (*Marsden, supra,* 2 Cal.3d at p. 123; see *People v. Nakahara* (2003) 30 Cal.4th 705, 718.)

"When a defendant seeks new counsel on the basis that his appointed counsel is providing inadequate representation—i.e., makes what is commonly called a *Marsden* motion [citation]—the trial court must permit the defendant to explain the basis of his

6

contention and to relate specific instances of inadequate performance. A defendant is entitled to relief if the record clearly shows that the appointed counsel is not providing adequate representation or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result." (*People v. Smith* (2003) 30 Cal.4th 581, 604.)

A defendant's "mere failure to get along with or have confidence in counsel" does not constitute an adequate basis for granting a *Marsden* motion. (*People v. Bills* (1995) 38 Cal.App.4th 953, 961.) "A defendant may not effectively veto an appointment of counsel by claiming a lack of trust in, or inability to get along with, the appointed attorney." (*People v. Smith, supra,* 30 Cal.4th at p. 606.) A defendant "may not force the substitution of counsel by his own conduct that manufactures a conflict." (*Smith, supra,* 6 Cal.4th at p. 696.)

"A defendant does not have the right to present a defense of his own choosing, but merely the right to an adequate and competent defense. [Citation.] Tactical disagreements between the defendant and his attorney do not by themselves constitute an 'irreconcilable conflict.' 'When a defendant chooses to be represented by professional counsel, that counsel is 'captain of the ship' and can make all but a few fundamental decisions for the defendant.' [Citation.]" (*People v. Welch* (1999) 20 Cal.4th 701, 728-729 (*Welch*).) Thus, complaints that "mostly show disagreement as to tactics" are "insufficient to compel discharge of appointed counsel." (*People v. Cole* (2004) 33 Cal.4th 1158, 1192 (*Cole*).)

"Substitution of counsel lies within the court's discretion." (*People v. Smith, supra,* 30 Cal.4th at p. 604.) "We review a trial court's decision declining to discharge appointed counsel under the deferential abuse of discretion standard." (*Cole, supra,* 33 Cal.4th at p. 1190.) To the extent that there is a "credibility question between defendant and counsel" at a *Marsden* hearing, the trial court is " 'entitled to accept counsel's explanation.' " (*Smith, supra,* 6 Cal.4th at p. 696.)

### C. *The Trial Court Did Not Abuse its Discretion*

At the *Marsden* hearing, defendant made the following allegations in support of his request for substitute counsel: Barnett was a "habitual liar" who lied to the judge in case number SS090914A, Barnett "suppressed" evidence "in the interest of the prosecution" in case number SS090914A, Barnett failed to file motions against "judges and attorneys" in case number SS090914A, defendant "cannot stand" Barnett, and there would never be a "working relationship" between defendant and Barnett. In response to defendant's allegations, Barnett asserted the following: she had never lied to defendant and had never lied in a court proceeding, she had not conspired with the prosecution in any way, she helped defendant to file a motion on his own when she did not concur with the motion, her communication problem with defendant was caused by defendant's failure to participate, and she had hired an additional investigator to facilitate better communication with defendant. Throughout the *Marsden* hearing, Barnett emphasized that she was willing and able to present a vigorous defense notwithstanding defendant's failure to participate.

Defendant's allegations at the *Marsden* hearing failed to establish that he was entitled to appointment of substitute counsel. A claim of "inability to get along with" counsel is insufficient to compel appointment of substitute counsel. (*People v. Smith, supra,* 30 Cal.4th at p. 606.) Thus, defendant's claims that he could not stand Barnett and could not have a working relationship with Barnett were insufficient grounds for substitution of counsel. Nor did defendant's claim that Barnett was a liar compel appointment of substitute counsel—the trial court specifically found that Barnett was "credible," "not a liar," and had "made honest representations" in court. (See *Smith, supra,* 6 Cal.4th at p. 696 [when there is a credibility question between defendant and counsel, the trial court is entitled to accept counsel's explanation].) Defendant's claims regarding Barnett's representation in case number SS090914A were also insufficient to require appointment of substitute counsel. Barnett's failure to heed defendant's request

8

to file motions "against judges and attorneys" in case number SS090914A was a tactical decision and did not necessitate appointment of substitute counsel. (See *Cole, supra,* 33 Cal.4th at p. 1192 [tactical disagreements are insufficient to compel discharge of appointed counsel].) Barnett stated that she had not conspired with the prosecution in case number SS090914A, a statement which the trial court found to be credible. Despite all of defendant's complaints, Barnett emphasized that she could vigorously defend defendant and would work to secure better communication with defendant. Given the foregoing record, we cannot conclude that defendant was entitled to substitute counsel. Indeed, "[n]othing in the record here shows that [Barnett] was incompetent or would not provide adequate representation if [she] received defendant's cooperation." (*People v. Michaels* (2002) 28 Cal.4th 486, 523.) We therefore conclude that the trial court did not abuse its discretion in denying defendant's *Marsden* motion.

Defendant contends that his State Bar complaint against Barnett and his writ petition that asserted ineffective assistance by Barnett created a conflict of interest between him and Barnett that necessitated appointment of substitute counsel. We are not persuaded. Defendant's comments at the *Marsden* hearing suggested that the State Bar complaint and writ petition contained complaints similar to the allegations defendant made in connection with the *Marsden* motion. As we explained above, those allegations were insufficient to compel appointment of substitute counsel. Moreover, a defendant cannot manufacture a conflict of interest by simply filing a lawsuit or State Bar complaint against his attorney. (See *People v. Hardy* (1992) 2 Cal.4th 86, 138.) We thus conclude that the existence of the State Bar complaint and writ petition did not necessitate appointment of substitute counsel.

Defendant also contends that the trial court erred because it did not provide him an opportunity to fully explain his complaints against Barnett. He emphasizes that, at points during the *Marsden* hearing, the trial court asked him to limit his discussion to case number SS111396A and to refrain from discussing case number SS090914A. This

9

argument is unconvincing.  The trial court's requests for defendant to refrain from discussing case number SS090914A were largely made in response to defendant's complaints about the trial judge's actions in case number SS090914A.  The trial judge's actions in case number SS090914A were irrelevant to defendant's *Marsden* motion in case number SS111396A.  Moreover, the record shows that the trial court provided defendant an ample opportunity to voice his concerns regarding Barnett, including his objections to Barnett's representation in case number SS090914A.  The trial court permitted defendant to describe an alleged conspiracy between Barnett and the prosecution in case number SS090914A, Barnett's alleged suppression of evidence in case number SS090914A, Barnett's alleged lies to the trial judge in case number SS090914A, and Barnett's refusal to file certain motions in case number SS090914A. Indeed, after the trial court summarized defendant's complaints regarding Barnett, the trial court permitted defendant to reiterate some of his concerns regarding Barnett's representation in case number SS090914A.  Thus, on the record before us, we cannot conclude that the trial court failed to permit defendant to fully describe his complaints against Barnett.

In summary, for the foregoing reasons, we conclude that the trial court did not abuse its discretion in denying defendant's *Marsden* motion.  We therefore will not reverse the judgment due to the trial court's refusal to appoint substitute counsel.

**II.  *The Trial Court Did Not Err in Denying Defendant's Faretta Motion***

Defendant contends that the judgment of conviction must be reversed because the trial court erred in denying his *Faretta* motion for self-representation.  As explained below, we conclude that the trial court did not abuse its discretion in denying defendant's *Faretta* motion.

**A.  *Background***

Immediately after the trial court denied the *Marsden* motion at the September 8, 2011 hearing, defendant stated that he wanted to make a *Faretta* motion for

10

self-representation.  The trial court set the matter for a *Faretta* hearing on September 20, 2011.  After the trial court set the date for the *Faretta* hearing, defendant stated to the trial court:  "I'll be filing with the Commission of Judicial Performance against you as soon as I get back.  You're full of shit.  Fucken [*sic*] lying ass mother fucker is what you is, bitch."

At the *Faretta* hearing on September 20, 2011, the trial court inquired into defendant's knowledge of the charges against him, his understanding of the rights he would waive if he represented himself, and his experience and familiarity with trial procedures.  As the trial court conducted this inquiry, defendant repeatedly interrupted.  After defendant had interrupted several times, the trial court advised defendant:  "[Y]ou keep interrupting the Court.  So these are the kinds of procedures and processes that can't be allowed if you are representing yourself."  The trial court then began to discuss court documents that defendant had submitted, and it expressed concern about defendant's "familiarity with the law."  Defendant continued to interrupt.  The trial court warned:  "You continue to interrupt the Court.  That is exactly what cannot be allowed in this type of proceeding or in any type of proceeding if you're going to be representing yourself."  The trial court proceeded with the hearing, and defendant again interrupted.  The trial court warned defendant that he was continuing to interrupt, and defendant responded, "Shit."

The trial court then noted that it had reviewed transcripts of prior court proceedings in which defendant had been disruptive.  Defendant again interrupted and expressed frustration with Barnett.  Defendant said to Barnett, "I'm going to beat the living fuck out of you before you even consider representing me.  You might as well stop your taunting shit."  The trial court warned defendant that "making threats in the courtroom is completely inappropriate," and defendant accused the trial court of "damn judicial corruption."  Defendant yelled, "[F]uck this Court."  The trial court noted that defendant was "yelling at the Court."  The trial court resumed commenting on the

11

transcripts of prior proceedings, noting that the transcripts showed defendant had interrupted on "numerous occasions" and "was forcibly removed on four occasions for acting out in court." Defendant continued to interrupt and accused the trial court of "violat[ing] the damn law."

The trial court finally denied defendant's *Faretta* motion. The trial court explained: "What the Court is seeing . . . today in significant fashion by the defendant's continued interruptions of the Court as well as his outbursts that he doesn't have the ability to abide by the rules and procedure of courtroom protocol. He's continuously manifested an inability to conform his conduct to the procedural rules and courtroom protocol."

## B. *Legal Principles and the Standard of Review*

In *Faretta, supra,* 422 U.S. 806, the United States Supreme Court recognized that "a defendant in a state criminal trial has a constitutional right to proceed without counsel." (*Id.* at p. 807.) A defendant "has a Sixth Amendment right to conduct his own defense, provided only that he knowingly and intelligently forgoes his right to counsel and that he is able and willing to abide by rules of procedure and courtroom protocol." (*McKaskle v. Wiggins* (1984) 465 U.S. 168, 173.)

"The right of self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with relevant rules of procedural and substantive law." (*Faretta, supra*, 422 U.S. at p. 834, fn. 46.) "A constantly disruptive defendant who represents himself, and who therefore cannot be removed from the trial proceedings as a sanction against disruption, would have the capacity to bring his trial to a standstill." (*Welch, supra,* 20 Cal.4th at p. 734.) "Thus, a trial court must undertake the task of deciding whether a defendant is and will remain so disruptive, obstreperous, disobedient, disrespectful or obstructionist in his or her actions or words as to preclude the exercise of the right to self-representation." (*Id.* at p. 735.) A trial court properly

12

denies a request for self-representation where the defendant exhibits disruptive behavior in the courtroom.  (*Ibid.*)

We review a trial court's denial of a self-representation motion for abuse of discretion.  (*Welch, supra,* 20 Cal.4th at p. 735.)  The trial court's ruling " 'will not be disturbed in the absence of a strong showing of clear abuse.' "  (*Ibid.*)

## C.  *The Trial Court Did Not Abuse its Discretion*

Before the trial court denied defendant's *Faretta* motion, defendant repeatedly engaged in disruptive behavior in the courtroom:  he constantly interrupted when the trial court was speaking, he continued to interrupt despite the trial court's many warnings to cease interrupting, he frequently cursed, he directed expletives at the trial court and his attorney, he yelled when he addressed the trial court, and he threatened violence against his attorney.  Given defendant's disruptive, disrespectful conduct and his failure to heed the many warnings to cease interrupting, it was apparent that defendant was unable and unwilling to abide by the rules of courtroom procedure and protocol.  The trial court therefore did not abuse its discretion in denying defendant's *Faretta* motion for self-representation.

Defendant contends that his disruptive outbursts were merely a reaction to the denial of his *Marsden* and *Faretta* motions and therefore those outbursts did not establish his inability to abide by the rules of courtroom procedure and protocol.  Defendant correctly asserts that disruptive behavior following the denial of a *Faretta* motion should not be considered when determining whether a trial court erred in denying a *Faretta* motion. (*Moon v. Superior Court* (2005) 134 Cal.App.4th 1521, 1530-1531.)  His argument fails, however, because the record shows that he continuously engaged in disruptive conduct *before* the trial court denied his *Faretta* motion and repeatedly engaged in disruptive conduct *before* the trial court denied his *Marsden* motion.  Because defendant constantly engaged in disruptive conduct, and did not merely make angry

13

outbursts following the denial of his *Marsden* and *Faretta* motions, the trial court did not err in denying defendant's request for self-representation.

Defendant finally contends that the trial court abused its discretion because it expressed concern regarding his familiarity with the law. As defendant correctly asserts, a "defendant's 'technical legal knowledge' is 'not relevant' to the determination whether he is competent to waive his right to counsel." (*Godinez v. Moran* (1993) 509 U.S. 389, 400.) Although the trial court here did express concern regarding defendant's familiarity with the law, that was not the basis for the denial of defendant's *Faretta* motion. Rather, the trial court emphasized that it was denying the *Faretta* motion due to defendant's disruptive courtroom behavior. Moreover, even if the trial court had denied the *Faretta* motion due to defendant's unfamiliarity with the law, reversal would not be required. When a trial court denies a *Faretta* motion for an improper reason, a reviewing will uphold the ruling "if the record as a whole establishes defendant's request was nonetheless properly denied on other grounds." (*People v. Dent* (2003) 30 Cal.4th 213, 218.) Here, because defendant's disruptive conduct provided a proper ground for denial of his *Faretta* motion, the trial court's comments regarding defendant's unfamiliarity with the law do not provide a basis for reversal.

In summary, we conclude that the trial court did not abuse its discretion in denying defendant's *Faretta* motion for self-representation. We therefore will not reverse the judgment of conviction due the trial court's refusal to let defendant proceed in propria persona.

## III. *The Abstract of Judgment Must be Modified to Accurately Describe Counts One and Two*

In count one and count two, the jury convicted defendant of violating Penal Code section 4500. The information described defendant's Penal Code section 4500 violations as assaults by a life prisoner "by means of force likely to produce great bodily injury."

14

The abstract of judgment, however, describes both of defendant's Penal Code section 4500 convictions as "Assault w/ Deadly Weapon by Life Prisoner."

Defendant contends that the abstract of judgment must be modified to accurately describe his convictions in counts one and two. The Attorney General concedes that the abstract of judgment should be modified, noting that the record shows that defendant did not use a deadly weapon.

A court "may correct clerical errors at any time." (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.) We therefore order the abstract of judgment to be modified to describe each Penal Code section 4500 conviction as assault by a life prisoner by means of force likely to produce great bodily injury.

## DISPOSITION

The abstract of judgment is ordered modified to describe each Penal Code section 4500 conviction (count one and count two) as assault by a life prisoner by means of force likely to produce great bodily injury. As so modified, the judgment is affirmed.

15

_____

RUSHING, P.J.

WE CONCUR:

_____

PREMO, J.

_____

ELIA, J.

16