Filed 1/14/21  P. v. Wilson CA2/3
Opinion on transfer from Supreme Court

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B287272 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA454306) |
| v. | |
| DAMION WILSON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Jose I. Sandoval, Judge.  Reversed with direction.

Edward Mahler, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews and Chung L. Mar, Deputy Attorneys General, for Plaintiff and Respondent.

Damion Wilson pleaded no contest to forcible rape and admitted prior felony convictions after the trial court denied his *Faretta*[1] motion. He appealed and contended that the motion should have been granted, that he did not knowingly and intelligently waive his right to a jury trial on his priors, and that he was entitled to remand for resentencing under Senate Bill No. 1393. In our original opinion filed in 2019, we rejected these contentions and affirmed the judgment.

Wilson petitioned for review. The California Supreme Court granted review and transferred the matter with directions to vacate our decision and to reconsider the cause in light of *People v. Stamps* (2020) 9 Cal.5th 685, which held that a defendant who entered into a negotiated plea that included a sentence on a five-year prior is entitled to have a trial court consider on remand whether to strike that enhancement under Senate Bill No. 1393. Accordingly, on reconsideration, we reverse the judgment as to the sentence only and remand to give Wilson the opportunity to raise that new law. As before, we reject his remaining contentions.[2]

## BACKGROUND

Wilson and the victim had a brief relationship. After it ended, he forcibly entered the victim's home and raped her. An information therefore charged Wilson with kidnapping (Pen.

---

[1] *Faretta v. California* (1975) 422 U.S. 806 (*Faretta*).

[2] Because the matter is being remanded, we need not address Wilson's contention that he is entitled to a hearing on his ability to pay assessments and fines, under *People v. Dueñas* (2019) 30 Cal.App.5th 1157.

Code,[3] § 207, subd. (a); count 1), forcible rape in the course of a burglary (§§ 261, subd. (a)(2), 667.61, subds. (a), (d)(4); count 2), first degree burglary, person present (§ 459; count 3), and assault to commit a felony during commission of a first degree burglary (§ 220, subd. (b); count 4).  On November 6, 2017, Wilson pleaded no contest to forcible rape and admitted he had a prior strike and a prior serious felony conviction (§ 667, subd. (a)(1)).  Pursuant to the negotiated plea, the trial court sentenced him to six years, doubled to 12 years based on the prior strike, plus five years for the prior serious felony, for a total of 17 years.

## DISCUSSION

### I.    *Faretta* request

On the eve of trial, Wilson asked to represent himself.  The trial court denied the request, finding it equivocal.  As we now explain, the request was properly denied, but for another reason, untimeliness.

A defendant in a criminal case has a Sixth Amendment right to represent himself or herself.  (*People v. Marshall* (1997) 15 Cal.4th 1, 20.)  To invoke this right, the defendant must unequivocally assert it within a reasonable time before trial (*People v. Windham* (1977) 19 Cal.3d 121, 127–128), and the request must be knowing and voluntary (*People v. Doolin* (2009) 45 Cal.4th 390, 453).  A timely, unequivocal request for self-representation must be granted, no matter how unwise the request.  (*Windham*, at p. 128.)  Otherwise, untimely requests for self-representation are addressed to the trial court's sound

---

[3] All further statutory references are to the Penal Code unless otherwise indicated.

discretion.  (*Id.* at pp. 127–129.)  Also, an equivocal request must be distinguished from a conditional one.  A conditional request is one, for example, where the defendant asks that counsel be removed and, if not removed, that the defendant wants to represent himself.  (*People v. Michaels* (2002) 28 Cal.4th 486, 524.)  Such a request is not equivocal.  (*Ibid.*)  To evaluate whether a trial court erred by denying a *Faretta* request, we look at the defendant's words and conduct to determine whether the defendant really wanted to give up the right to counsel. (*Marshall*, at pp. 25–26.)

Here, Wilson's words and conduct were clear that if he did not get a different counsel, then he wanted to represent himself. On the day set for trial, Wilson made a *Marsden*[4] motion, which was denied.[5]  He then asked to represent himself.  The trial court advised Wilson of the felony charges against him, that he faced three different strikes and two life counts, and that self-representation was a bad decision.  When the trial court asked Wilson if he really did not want help to understand the technical and sophisticated legal principles, Wilson said, "It's not what I wish but," "I wish I had counsel that I believe is going to fight on my behalf."  The trial court found the request to be equivocal:  "It

---

[4] *People v. Marsden* (1970) 2 Cal.3d 118.

[5] Wilson had previously made *Faretta* and *Marsden* motions.  When he made his first *Faretta* request, the trial court asked Wilson if he really thought he could represent himself. Wilson replied he could do a better job than his counsel, who was not cooperating with him.  After further discussion, Wilson said he would rather have another public defender.  The trial court therefore held a *Marsden* hearing and denied the *Marsden* motion.

4

has to be unequivocal.  It's clear to me you want counsel.  It's clear you need counsel.  And this is in response to a[n] adverse ruling in another motion, sir."

Wilson then asked if he could have cocounsel, and the trial court told him no, this was not a way to get a different lawyer. Wilson replied, "What I'm saying—I don't need a lawyer to represent me.  A standby lawyer—I don't need somebody that's going—"  At that point, the trial court interrupted Wilson and asked why he needed a standby lawyer.  Wilson said, "just in case if I have a question."  When the trial court explained that this was not how a standby lawyer works, Wilson said he did not need counsel, then.  The trial court repeated that the request was equivocal, and that Wilson was trying to get another lawyer, recognizing he needed representation.  Wilson repeated he didn't need another counsel.  He said, "I'm not asking for another counsel.  You said this is my decision.  [¶] . . . [¶] . . . This is not—this is not what I want to do, but my counsel that's representing me left me no choice.  I'm going in blind, not knowing what's going on, your Honor."  This, the trial court responded, was exactly the equivocation that made it clear Wilson did not want to represent himself.  The trial court therefore denied the *Faretta* request.

As this demonstrates, Wilson's dissatisfaction with his counsel prompted his *Faretta* request.  But, a clearly stated *Faretta* request motivated by dissatisfaction with counsel is not equivocal.  (*Moon v. Superior Court* (2005) 134 Cal.App.4th 1521, 1529–1530.)  In *People v. Weeks* (2008) 165 Cal.App.4th 882, for example, a public defender represented the defendant.  The defendant then was permitted to go pro se.  After several months, the defendant asked if his standby counsel could take over but

was told that if he lost his pro per status the original public defender would be reappointed.  The defendant made it clear that if he had to choose between remaining in propria persona or being represented by his original public defender, then he would choose the former.  (*Id.* at p. 885.)  Finding the defendant's position to be equivocal, the trial court revoked his status and reappointed the original public defender.  *Weeks* held that denying the request was error.  (*Id.* at p. 887.)  Like the defendant in *Weeks*, Wilson clearly expressed he would rather represent himself than continue being represented by his counsel.  Hence, his request was conditional.

And, had it been timely, it should have been granted.  But it was not timely.  That is, a motion to represent oneself must be made within a reasonable time before trial commences.  (*People v. Windham*, *supra*, 19 Cal.3d at p. 128.)  Thus, a *Faretta* motion made on the day of trial may be found to be untimely (*People v. Frierson* (1991) 53 Cal.3d 730, 740, 742), as may one made four days before trial is to begin (*People v. Scott* (2001) 91 Cal.App.4th 1197, 1205).  An untimely *Faretta* request requires consideration of the quality of counsel's representation, the defendant's prior proclivity to substitute counsel, the reasons for the request, the length and stage of the proceedings, and the disruption or delay which might reasonably be expected to follow the granting of such a motion.  (*Windham*, at p. 128.)

Although the trial court did not state it was also denying Wilson's *Faretta* motion on the ground of untimeliness, we can independently review the record to determine whether it would properly have been denied on this ground.  (See *People v. Halvorsen* (2007) 42 Cal.4th 379, 433, fn. 15.)  In *People v. Dent* (2003) 30 Cal.4th 213, 218, for example, the trial court denied a

6

*Faretta* motion for an improper reason. However, *Dent* noted that even if a request is denied for an improper reason, if the record establishes that the request was nonetheless properly denied on other grounds, it would uphold the trial court's ruling. (*Dent*, at p. 218; see *People v. Scott*, *supra*, 91 Cal.App.4th at p. 1206 [sufficient reasons on record constitute implicit consideration of *Windham* factors].)

The record here similarly shows that Wilson's motion was properly denied. Wilson made his *Faretta* motion on the day set for trial. The next afternoon, the trial court swore in a prospective panel. On its face, the motion was untimely. Also, the trial court had the opportunity to evaluate the quality of Wilson's counsel, as Wilson made three *Marsden* motions, all of which were denied. This shows that Wilson had adequate representation. Also, counsel was ready to proceed to trial and voir dire was about to begin. But the record supports a reasonable inference that granting the motion would have necessitated a continuance. When Wilson made his *Faretta* request, he asked for standby counsel, said he was going "in blind, not knowing what's going on," and noted that he had "no paperwork. [He didn't] have nothing." Wilson's own statements show he was not ready for trial. Under the totality of these circumstances, the *Faretta* motion was properly denied.

II.    Waiver of right to jury trial

Wilson contends he did not knowingly and intelligently waive his right to a jury trial on the strike and enhancement. We disagree.[6]

---

[6] Although we are remanding, as we discuss in the next section, we address this issue because it would remain relevant

7

A criminal defendant's guilty plea or inculpatory admission requires personal waiver of the right to a trial by jury. (*Boykin v. Alabama* (1969) 395 U.S. 238, 243.) The trial court accordingly must advise a defendant of his or her rights and obtain a waiver of them before taking a plea or admission. (*In re Tahl* (1969) 1 Cal.3d 122, 132.) A valid waiver is one that is knowing, intelligent, and voluntary. (*Boykin*, at p. 242.) These advisements also must be given before the trial court may accept a defendant's admission that he or she has suffered prior felony convictions. (*In re Yurko* (1974) 10 Cal.3d 857, 863.)

The plea bargain here required Wilson to plead no contest to the substantive forcible rape charge and to admit a prior strike and a prior serious felony. The prosecutor advised Wilson of the substantive charges, and Wilson acknowledged he had discussed them with his counsel and that he understood he would be sentenced to 17 years in prison. The prosecutor then advised Wilson of his right to a jury trial, and Wilson said he understood and gave up that and other rights. *After* this advisement and waiver, the prosecutor explained that Wilson's prior strike could subject him to life in prison on subsequent felonies. The trial court repeated the offer: six years for forcible rape, doubled to 12 years based on the strike, plus five years, for a total prison sentence of 17 years. Wilson then pleaded no contest to count 2, forcible rape, and admitted he had a prior robbery conviction and a prior first degree burglary conviction. The trial court accepted the plea, finding that the waivers were made knowingly, freely, and intelligently.

---

should Wilson decide not to seek relief under Senate Bill No. 1393 in the trial court or should the trial court exercise its discretion not to strike the enhancement.

However, because the prosecutor detailed only the substantive charges before Wilson waived his jury trial right, Wilson now argues he was never advised he had a right to a jury trial on the enhancements; therefore, his waivers and plea were not knowing and intelligent. *People v. Forrest* (1990) 221 Cal.App.3d 675 rejected a similar contention. The defendant in that case argued that he had to be expressly and separately advised of his right to a jury trial on prior convictions. (*Id.* at p. 678 & fn. 3.) *Forrest* held that nothing in applicable case law requires a separate advisement and waiver of rights where a defendant "in a single proceeding" pleads to the substantive charge and to the prior convictions. (*Id.* at pp. 679, 681.)

We agree. Here, as in *People v. Forrest*, *supra*, 221 Cal.App.3d at page 679, Wilson's plea to the substantive offense and to the prior convictions occurred in a single proceeding and was not separate in time. The single, express advisement adequately advised Wilson of his constitutional rights, including the right to a jury trial on both the substantive offense and prior convictions. Therefore, the trial court correctly found that Wilson's plea was knowing and intelligent.

III.   Senate Bill No. 1393

When Wilson was sentenced in 2017, the trial court had no discretion to strike a section 667, subdivision (a)(1), enhancement. Senate Bill No. 1393 went into effect on January 1, 2019. (Sen. Bill No. 1393 (2017–2018 Reg. Sess.).) That bill amended sections 667, subdivision (a)(1), and 1385, subdivision (b), to allow a court to exercise its discretion to strike or to dismiss a serious felony prior for sentencing purposes. (Stats. 2018, ch. 1013, §§ 1–2.) Wilson contends that remand is required so that the trial court can exercise its discretion whether

9

to strike the enhancement.  Under *People v. Stamps*, *supra*, 9 Cal.5th 685, he is correct.

In that case, the defendant in 2017 entered into a negotiated plea that included an admission of one serious felony, and his agreed-upon sentence included five years for that enhancement.  (*People v. Stamps*, *supra*, 9 Cal.5th at p. 693.) The defendant appealed and, like Wilson, contended his case should be remanded so that the trial court could exercise its discretion whether to strike the enhancement under Senate Bill No. 1393.  The Court of Appeal agreed that remand was proper. On review, the California Supreme Court affirmed the Court of Appeal and found that the defendant did not need a certificate of probable cause and that Senate Bill No. 1393 applies retroactively to judgments not yet final.[7]  (*Stamps*, at pp. 698– 699.)  Although the court further agreed that remand was proper, it disagreed with the defendant's argument that, on remand, the trial court could consider striking the enhancement but otherwise maintain the negotiated plea agreement.  Instead, several things could happen on remand.  A trial court could decide not to strike the enhancement, leaving the plea agreement wholly intact. (*Id.* at p. 707.)  Or the trial court could strike the enhancement. In that case, if the prosecution declines to modify the bargain to reflect the "downward departure in the sentence," the prosecutor is entitled to withdraw consent to the plea agreement.  (*Ibid.*) The trial court could also withdraw its approval of the plea agreement.  (*Ibid.*)

---

[7] Wilson did obtain a certificate of probable cause.

Wilson's situation is essentially indistinguishable from *Stamps*. Wilson therefore must be given the opportunity to request relief under Senate Bill No. 1393.

## DISPOSITION

The judgment of conviction is reversed as to the sentence only and remanded with the direction to allow Damion Wilson an opportunity to seek relief under Senate Bill No. 1393.

NOT TO BE PUBLISHED.


DHANIDINA, J.


We concur:



EDMON, P. J.



EGERTON, J.